I'd like for the attorneys to step up to the podium. I'd like for you to tell the court your names, who you represent, and approximately how long your argument will take. My name is Edward Joyce. Together with Joan Mannix, I represent Gerard Calagrossi. I'd like 15 minutes, if I could, for my direct. I'd like to reserve five for rebuttal. Very good, Mr. Joyce. Good morning, counsel. Good morning. My name is Chris Kemenetz, and this is my colleague, Pat Smith. I represent BB & Hamilton Bank, which is now known as the Royal Bank of Scotland, or RBS. I expect our argument to take about 15 minutes. Very good. Mr. Kemenetz, why don't you have a seat? Mr. Joyce, why don't you proceed with your argument? Thank you, Your Honor. As I said, my name is Ed Joyce, and together with Joan Mannix, I represent Gerard Calagrossi. Mr. Calagrossi filed three separate lawsuits in the Circuit Court of Cook County relating to the transfer of his business and promises made with respect to compensation. And only one of those cases, the case now on appeal, was RBS, Royal Bank of Scotland, which was then known as ABM Bank, defended. What was it originally filed as? The original case was filed, it was Calagrossi v. ABM, AMRO, the FCM, and UBS, the FCM, and several individuals. No, no, this case. This case was originally filed as Gerard Calagrossi v. ABM, AMRO, the FCM, and Royal Bank of Scotland. No, as in ABM, AMRO, Inc. ABM, AMRO, Inc. was the name of the FCM. That became UBS. Now it's acquired by UBS. I'm sorry? That became UBS. UBS then purchased them. I apologize, there's so many of these names that are substantially similar in the change throughout the litigation, but I'll start with the names. Mr. Calagrossi worked for Moon Financial. He was approached by Mr. Murphy. We know the facts, but with regard to the complaint that was, let's start with the Substitution of Judge. Yes, I'd like to start there. Okay, why don't you proceed with your argument. Thank you. In only one of the three cases that he filed, the case now on appeal, is RBS, which was previously known as ABM Bank, a partner. Well, that's the case that the original complaint on file, that you filed in 2011. In this case. In this case. There were two defendants. Two defendants. ABM, AMRO, Inc. Royal Bank of Scotland. Okay, and so at the time that the hearing was held on the other case before Judge Taylor, the complaint on file was the original complaint, is that correct? Correct, and it was stayed. It had been stayed for two years. It was stayed to give the parties an opportunity to try and settle. There was, because of the nature of the Illinois Wage Payment and Collection Act, many people who were not technically an employer could be liable under the Wage Act. So there was a case filed against UBS, which it moved to federal court. There was a case, which started out before Judge Winkler, where UBS, ABM, AMRO, now AAI, some individuals were defendants. Then there was a case, this case, that was filed by Caligrosi against ABM, AMRO, Inc., the FCM, and Royal Bank of Scotland. And that related exclusively to an oral promise to pay Mr. Caligrosi a share of profits from futures, from FCMs, I'm sorry, I'm getting my things mixed up, from a type of non-futures contract that was referred by him to Royal Bank of Scotland. So I think it's very significant, it's critically significant, that Royal Bank of Scotland was not a party to the case which Judge Taylor decided. Why is that significant? Because I think the reported decisions that were relied upon by RBS, I think the Bowman Supreme Court decision, make it clear that if you're going to entertain an argument about testing the waters, which I don't think the court should these days, all the cases where that was an issue, you're looking at two cases. And in each case, the parties were the same. And in each case, the relief sought was the same. And the Supreme Court in Bowman made it very clear they were supporting the testing the waters result, although not the theory, because the first filed case was the same as the refiled case. They concluded under the statute it was the same case. But in this case, ABM, AMRO, Inc. is in both cases, correct? But ABM, AMRO, Inc. was no longer a party. No longer a party where? It was no longer a party at the time that we made the motion for substitution. It was no longer a party in the case. No, no, no. At the time, I'm talking on June 18th. June 18th, it was a party. It was a party. Okay. And it was a party in both cases, is that correct? It was a party in both cases. And on that date, the judge, and the party now that's asking for substitution is not Royal Bank, but Kalai Rosi, right? Kalai Rosi is asking for substitution, yes. And so we have the same defendant in both cases. And you just lost in a case that you would concede that these are related cases when you're not. I don't even know what related means in this context. Well, were there orders entered? Absolutely not. It was sent there by a total of half a dozen. No, no. Were there orders entered by the court that called these cases related? None that I'm aware of. Okay. How about the order of August 10th, 2012, parties shall also appear in discovery status on related case 08L9672. That's just the name that the parties, the parties referred to as related. There was never a motion to transfer the case to Judge Sanjay Taylor. It went there off the wheel. There was never a motion to find them related under any statute. It's just the parties said they were related. Well, they are related. So whether it's in an order, it's not calling them related as a matter of – I was calling them related. There's another order with regard to status May 25th, 2012, parties will report on status of negotiation regarding UBS securities assuming liability of ABN. And so these cases were proceeding in tandem, were they not? Absolutely not. The case before you was stayed. It was filed. It was stayed within weeks of being filed. The case before you was filed.  But the case before you was filed, the stay was not lifted until about the time Judge Taylor ruled in the ABN-NRO-UBS case. And as soon as the stay was lifted, Mr. Calabrosi moved to amend the pleading, and then he moved for substitution of judge. There was no hearing, no trial, nor the proceeding. Absolutely correct, Your Honor. At the time he made his motion for substitution of judge, there had been no ruling in this case on any issue, let alone a substantive issue. The trial was not scheduled, no hearing was scheduled, so under the statute, he qualified. Counsel, let me ask you this question. You maintain that these cases are not related. Was Mr. Calabrosi essentially trying to recover the same thing in all three lawsuits? No. In the lawsuit in federal court, he was seeking to receive income he lost as an employee. In the ABN-NRO case that was filed against ABN-NRO-UBS, he was seeking to recover damages because he alleged Mr. Murphy lied to induce him to transfer his futures commission merchant business to ABN-NRO-FCM. And in the case pending before this court, he wasn't essentially trying to recover the same money? In the case pending before this court, he was essentially trying to enforce an oral contract between Mr. Calabrosi and RBS that RBS would share the profits it realized on these contracts that Calabrosi referred to RBS. But that first, that oral contract wasn't involved in the first case pending before Judge Taylor? It was not. The oral contract was a contract that was negotiated on behalf of RBS by Mr. Murphy. During the course of Murphy seeking to induce Calabrosi to move his business from man financial to ABN-NRO-inc, ABN-NRO-inc received financial statements showing how profitable the man financial business was. Among the things they noticed was he had this non-FCM business that was profitable, and the bank asked Mr. Murphy to try and get that business. So Murphy is now working on behalf of the futures commission merchant to bring over the man financial business. He's also seeking to convince Calabrosi, pursuant to an oral agreement, to transfer those contracts to RBS. And Calabrosi said, sure, if I share the profits, I'd be happy to do that. What was the effect of the integration clause on this? The integration clause and also the non-reliance clause each are limited specifically to Mr. Calabrosi's work as an employee of ABN Futures. It never referenced directly or indirectly any involvement between Calabrosi sending the contracts that could not be handled by the FCM to the bank. It's significant here that the contract provides that... Counsel, what page are you reading from and is it in the appendix? It's in the appendix and it's SA3, which I think that means it's the defendant's appendix. And it bears production Calabrosi 00023, and it's under a paragraph entitled modification. But it says, this agreement contains the entire understanding of the parties regarding the subject matter hereof. The paragraph goes on to say, this document supersedes any and all oral or written understandings regarding your employments with ABN AMRO, which was the Futures Commission Merchant, or any of its affiliates. So it is clear from the contract that the non-reliance clause and the other clause related to employment. It's also clear that Mr. Calabrosi never was an employee of RBS, the bank. Another thing that is clear here is that Calabrosi brought over his Future Commission Merchant business, which essentially was filling Futures contracts at the desk. And the contract that RBS wanted Mr. Calabrosi to refer to the bank was not a Futures contract. It was not a contract that either ABN AMRO linked the FCM or RBS the FCM filled or wanted to fill. It was completely outside the scope of his employment in order to do that. To the extent employment is an issue at all in this case, I'm sorry, to the extent the scope of his employment is an issue in this case, it's another reason why the motion to dismiss never should have been granted. But, Counsel, let me just go back to the provision that you just read. It says this agreement contains the entire understanding of the party. As it relates to Mr. Calabrosi's employment at ABN AMRO, the Futures Commission Merchant, it's clear that provision is strictly related to his employment as an employee of the Futures Commission Merchant. And it also says on the first page of that contract, it has SA1. And it says Calabrosi is being hired. Where are you reading from? I'm reading under the section that says title slash function. Okay. And it says Calabrosi is being hired to be the director in our Futures division. Okay. There's nothing at all to do with Royal Bank of Scotland, which then was known as ABN Bank. Okay. So any notion that something Judge Taylor found or ruled on in the AAI, ABN Bank, I'm sorry, the AAI or UBS case related to the RBS case is just spacious. Well, let's see how spacious it is. If the time of the hearing in the ruling on the other case that you had brought, at the end of the hearing it was brought up that there's another matter before the judge. And this is all within the transcript of the other case, not this case. Right. And at that time the defendants say that they're going to bring a motion. And your response is that we're going to seek leave to amend the pleading. So on the exact day, immediately following the ruling against ABN Futures, you asked to amend your pleadings. Now, if that doesn't seem to indicate judge shopping, I don't know what does. Well, yeah. What else would you have meant? Because what you did is you took out the Futures, right? You took them out. I took out ABN AMRO, the Futures Commission Merchant, as a defendant in a case essentially related to the We had no discovery. None at all. Not a single bit of discovery. And that case was stayed immediately. The discovery is the same discovery as in the other two cases, isn't it? We had no discovery with respect to the claims against RBS. RBS has only stepped in by name only. They weren't even in the picture at the time these occurrences happened. That's not true. RBS is a name change. It's a name change. Yeah, exactly. It's a name change. It was ABN Bank. ABN Bank was in this case, was in this transaction from the court. Yeah, and you had received discovery relating to ABN Bank in the other cases. We received some discovery in the federal court. Minimal. Okay? And only after fighting, well, it's not an issue before you. We got minimal discovery in the federal court. But what's significant here is the case before you was stayed. As soon as the stay was lifted, and the stay was lifted because it became obvious there was going to be no settlement. When was the stay lifted? The stay was lifted, and I can't tell you the exact date. It was about the time the court ruled on June 18th in the Calabasas versus UBS ABN case. I don't have the order. I looked for it in the record, and I couldn't find it. I was preparing for the afternoon. Was there a stay, or was it simply a continuance of statuses? No, it was a stay. It was a stay agreed to by the parties. Nothing happened at all except there were significant. There's a difference between a stay and coming before a judge for status from time to time. No. This case was stayed by agreement with the parties so we could affect the settlement. Well, if you didn't find an order stayed in a stay. You had a two-year interval. A case management status order. This matter is continued to November 21st, 2011. That's on September 21st, 2011. Then on November 16th, 2011, it's continued to 12-13-2011. Then on 12-13-2011, it's continued to February 1st, 2012. I haven't seen anything about a stay. Well, I'll find a stay order, and with leave of court, I will send. Well, if it's not in the record, you can't send it. I'm not suggesting I send something out of the record. Okay. But I can't at this point tell you what is in the record. In any event, as Justice Simon just asked, this case was stayed for two years. Immediately upon learning that there could be no settlement of this case, the stay was lifted. Mr. Cadros, he amended his pleading, and he promptly asked for a substitution of judge. Now, there's absolutely nothing in the statute which permits a court to refuse that on the basis of something the court said in a prior case that was not the same case, where the parties were essentially different, where the issues were essentially different, where the facts were essentially different. Well, it's the same facts that were in the other two cases. The underlying facts are the same. Some underlying facts are the same. Most of the underlying facts. Your argument is different. Many of the underlying facts are the same. But the issue on RBS was, was there an oral contract between Calabrese and RBS to share profits? That issue is never an issue in the other cases. Now, I know that you're testing the waters with regard to this judge, and he just ruled against you, citing also the federal case's decision. And at that time, you're dropping a party that was in the other case. I mean, we should be looking at what happened on that day. To me, that's the line in the sand. That day, June 18, what you did, on that day, as soon as you lost, you asked to amend. And what your amendment is, is to drop a party. And then, after that, you asked for a change, a substitution of judge. Now, why couldn't you have asked for a substitution of judge any time previously? Let me suggest that that question is exactly what is wrong with what Judge Taylor did. The substitution of judge statute does not invite a trial court judge to conduct a hearing or investigation about what might have motivated someone to take a change. It doesn't invite him to have a nuanced or subjective decision. It says very clearly, if you do A and you do B, you shall get a change of judge. Doesn't it also say that the whole idea is to avoid judge shopping? Statute does not say that at all. The Supreme Court in Bowman said, one of the things we have to be careful of here is judge shopping. Exactly. Now, I don't know what judge shopping is. I decided that Judge Taylor, although a wonderful human being and a very bright man, has a proclivity to like defendants. So, if I go before Judge Taylor as a plaintiff and I take a change, am I judge shopping? I'm doing what my client pays me to do. We have to look at the facts here. The facts here, though, are that you were pending before Judge Taylor from 2011, and that on the date that you asked to amend your complaint, which dropped A.A.I., was the exact date that he ruled against you and against A.A.I. in a different case. But it doesn't make any difference. That's what testing the waters is all about. If there is a testing the waters doctrine, it seems to me this might be a case where it may or may not apply, but this is a case that involves testing the waters. Would you agree to that? No. No, I wouldn't. Let me ask you this question then. This is what Bowman says. It says, considering the history of Section 2-1001 and the goals sought to be achieved, we conclude that Section 2-101A2-2I must be read as referring to all proceedings between the parties in which the judge to whom the motion is presented has made substantial rulings with respect to the cause of action before the court. It seems to me Judge Taylor is doing just what Bowman directs him to do. He's looking at the history of the case and all the proceedings that have been before the court. Here's where I respectfully disagree. What the Supreme Court was talking about here is trying to determine whether the rulings that were made in the first filed Bowman case were made in this case as those terms are used in the statute. And the court concluded that when you file a case and a judge makes substantive rulings, you dismiss the case under the statute and then we file a case. It's the same case under 2-1001. I think you're reading Bowman too narrowly. I might be, but that's how I read it respectfully. That's fine. That's how I read it respectfully. Okay. I just want to point out a couple of things that Judge Taylor said. Let me ask you this. If we decide that you are successful in the substitution of a judge, is there anything else we need to do? No. Because if you decide to inform me on that issue, which I think you should, then all the rulings of Judge Taylor after that point are void. Okay. So the only way we reach the merits would be if we find that the substitution of judge ruling is affirmed. Correct. If you adopt what the Supreme Court dissent calls an obsolete doctrine, testing the waters, if you adopt that, then his ruling could be upheld, and then you'd have to go to whether or not he ruled properly on the motions to dismiss. Okay. It's interesting. There's not a single reported decision, and RBS cited none, to the trial court, where rulings were made in case one where there were different parties, where there were different causes of action, and where different relief was asked, and then he applied that to this case. So the other thing that's relatively unusual here is that at the time Judge Taylor ruled in terms of testing the waters, RBS had not filed an answer. They had not filed a front and defense. They had not filed a motion challenging the pleadings. Yet Judge Taylor said, I think, I'm going to deny this, because I think that RBS might put forth a defense that I've ruled on in the other case, and now I've tipped my hand as to how I'm going to rule. Well, that's pretty far afield of what 21001 says. I mean, do I have to guess now? How is a judge going to relate to what my opponent might have not yet filed? Judge Taylor had no idea what type of answer would be filed or what type of defense would be put forth. So to me, it was totally inappropriate and well beyond the bounds of 1001A2. And, again, I think it's clear from the two cases they were ratified, Bowman at the appellate level and Participo at the appellate level. Those were cases where the same parties were in both cases, the exact same parties, and the exact same relief was being requested. So it wasn't hard to say you tested the waters when you had my ruling for the first case. Counsel, do you want to make some arguments with respect to your second issue, the circuit court erred in granting RBS's motion to defense? Yes, I do, and I'll make it very briefly if I can get there in my notes. By the way, just one more point in response to Justice Hyman's questions. Judge Taylor, in ruling as he did, acknowledged that the claims in RBS may not be identical to the claims in the other case. So in terms of the motion to dismiss, it was a combined 2615 to 216 motion, and we have no idea what motion the judge ruled on. 2615 to 2619. Correct, 2615 to 2619. We're surmising he ruled on 2619 because he was relying upon a document that was not attached to the pleadings, it was not in the record in this case. But it also appears that he was basically ruling on his view of how the non-reliance clause in the employment contract Telegosi signed with his employer, the future commission merchant, would impact on his oil agreement with the bank. That would have taken evidence not in the record yet as to what the party's intention was, what their understanding was, because it's clear from the language of the contract itself. The contract itself and the two clauses he relied upon related to employment only. Was AAI a wholly owned subsidiary of the bank? It was. It was. And I don't know why that has any relevance for the testing of waters, nor does it have any relevance for the oral contract with the bank. There's no law that says an employee of a future commission merchant subsidiary cannot make an oral contract with some third party, in this case the parent. There's no testimony anywhere that Telegosi ever worked for the parent, so it wouldn't be an employment contract. In ruling on the combined motion, the circuit court merely said, I granted the combined motion without saying which one it was, because, quote, the nonreliance clause bars the claims here against RBS, just as it barred the claims in Telegosi's case against his employer, AB Enamra. Is that the mainstay for the subsequent dismissal? That was the only reason advanced by the court for the dismissal, that a clause in an employment contract with another party somehow caused him to dismiss the claims. And at that point, there was no answer file, no firm defense file, so we don't know how he could have divined that those clauses would have been relevant on a motion to dismiss, but he did. And again, to the extent the court was guessing what the scope of this contract was in the minds of the parties, that was something for the jury to do. It's not something for him to do. I think I've probably used up more than my time. I'll try to answer your questions as best I could. So you're going to stand on your brief with respect to the second argument? I am. I think we've addressed all the issues in that. If there's any questions, I'll be happy to address them. Okay. Thank you very much, Mr. Joyce. Thank you. Mr. Kamitz. Thank you, Your Honor. May it please the court, Chris Kamitz on behalf of ABN Amaro Bank. I think it's probably most helpful to be crystal clear on the procedural posture, because some of your questions are illuminating. And so let me just click through the sequence of events and see if that doesn't help. The ruling on the motion to dismiss in the first case against the subsidiary AAI was on June 18th. Can I get one step before that? Yep. Was there a stay in it? There was not. I don't think there was an order that put a stay in place in that case. But I do see that you had statuses from time to time and it was continued, but that's not a stay. Correct. I don't remember a stay being under it, but I will assume we had agreed that we were going to try. I think the issue was whether the liability of that entity would be accepted by another party, and so we were trying to sort that out and let the first case run at the time. But I don't think there was a stay in it. I agree. I agree. It's in the record. All right. And so on the same day that that order was, that the first case was dismissed, the plaintiff requested and received leave to file an amended complaint. That amended complaint was filed on July 2nd, and that amended complaint was against both entities, AAI and ABN Bank. And it brought a claim against both entities for fraudulent inducements. It was AAI and who else? And ABN Bank. So before UBS. Yes, that's a different, that's yet another case. So in this case was always the first complaint, AAI and ABN Bank. He asks for leave on the day that motion to dismiss is granted in the related case, files an amended complaint against AAI and ABN Bank for fraudulent inducement, the same claim that was just dismissed. So after that. The same claim. Yes. The same fraudulent inducement claim against the same two defendants that were just dismissed. What's Murphy's doing? Sorry? Murphy's doing? Murphy is the single individual in all this case. Let's see if you can explain it a little better. Yes. Which is what Mr. Joyce said, if I understand correctly. He said the parties are different. Right. Okay. So just this time, let's go. He said the parties are different, the causes of action are different, and the relief is different. Let's go to each of those three areas. Why don't you start with the parties? You just said they're the same, if I understood you correctly. The claims were the same. No, no. You said the parties. All right. Let's start with the parties. Yes. So the second case, the case that's before you. Let's give them names. Yes. So let's call them the subsidiary and the parent to make it easier. 2008 case? 2008 case? Which case is this? The 08 case. Yes. And the 011 case is the one before it. Yes. Okay. So maybe 08 and 011. So the 08 case was against AAI, the subsidiary. The 011 case was against AAI, the subsidiary, and ABN, the parent. Okay. On June 18th, the claims against AAI, the subsidiary, are dismissed. That dismissal is on the basis of the integration clause in the contract and the waiver by the plaintiff by his actions. Okay. So it was a fraudulent inducement case that was dismissed. The same day, the plaintiff says, I would like to amend my pleading in the 011 case. The amendment of that pleading, the first amended complaint, is filed on July 2nd. That's record is C86. And it has two counts, fraudulent inducement and breach of contract, against the subsidiary, AAI, and the parent, ABN. Okay. Now, the breach of contract claim had nothing to do with the 08 case. The same conversations with the same individual. But that cause of action was not raised in the 08 case. The breach of contract claim was not raised in the 08 case. But you're saying that the fraudulent inducement claim was. Correct. So then the day he loses the 08 case, he amends the 011 case to restate the fraudulent inducement claims against AAI and the parent. Which he just lost on. Which he just lost on. Exactly right. Takes the claim out of the case he just lost and sticks it in the case that's still alive. Before that, he had made a motion for substitution to judge. We said, can't do that. It's the exact same claim. It's already been ruled on. He knows what's going to happen. He withdraws that substitution to judge motion and then moves to amend the complaint a second time in the 011 case. So it's the second amended complaint that removes AAI. That second amended complaint isn't allowed by the judge until after the substitution to judge is denied. So if I understand it correctly, he made two motions for substitution to judge? There was a substitution to motion to judge that was made on July 27, 2013. The record site is C38. It was later withdrawn. The motion for substitution of judge at issue in this case was made on August 13. The record site is C206. So no race judicata in any of these? The race judicata would have been relevant, but the 08 case had not yet completed its appeal. It has now. It was affirmed. All the same basis there in the second half of the argument or in that first case, all of them were affirmed by the law. Would race judicata apply here? I think it would now apply here, yeah. So if this case had not been dismissed and were alive, we could now make the race judicata argument because the first case is perfected. It's complete. But we can't do that. You don't need to do that. Right, because the judge reached the merits of the case and dismissed it for the same reasons as in the first case. But Mr. Joyce, I believe, would say, well, wait a minute. What he was arguing is my breach of contract claim. It's still there. I didn't get all my discovery on it. And nobody has made any decision on that. In fact, he didn't even respond, give any answer or affirmative defenses to it. So that's what I'm talking about. I have a right to go ahead against Royal Bank on the breach of contract. Yeah, there was nothing left to discover against Royal Bank because it was the same conversation with the same individual. But what about the breach of contract claim not having been brought in the OA case? The breach of contract claim relates to the same conversations that the fraudulent inducement claim was based on. One set of conversations between Mr. Colagrosi and Mr. Murphy in which he allegedly made certain promises. In the OA case, he claimed that those promises induced him to join. In the O11 case, he claimed that he had an oral agreement to receive those 50% of the profits of EFP trades, same promise that induced him in the OA case, same promise that was issued in the UBS case, which was also ruled against the money integration clause by the Northern District of Illinois. So that same question has been put to three courts. You're now the third. The first two have held that that integration clause, despite the arguments here about its scope, apply and prohibited all of these claims. So if we get by the substitution, then we can affirm on the same basis as in the federal court case and the OA case. Yeah, which is now complete. So that's the status. As to how you apply Bowman to this case, I think Bowman says exactly what you think it says. It construes this statute to avoid judge shopping. And the construction here, that argument has always focused on whether the plaintiff makes that substitution motion with any foreknowledge or indication of how the judge is going to rule. And there are a lot of procedural contortions. All of these cases are unique, but what they all have in common is that for whatever reason, that plaintiff or movant has seen that judge make a ruling on the same issue and has the luxury of making that substitution without the ignorance that the legislature presumed when they allowed the motion to exist. So what we'd be saying, in essence, is it doesn't matter how many parties there might be involved if there is an overlap of one party that the judge indicates how he or she is going to rule on the merits, that would be enough to prohibit a change of judge. Correct. In this case, you don't need to reach that because the first amendment complaint was the operative complaint at the time. It was a claim against AAI. So it was the same parties on the same factual basis. It was the same parties, but AAI is definitely the same party. And Royal Bank? Yes. Is the same party? No, Royal Bank is in the second case, not the first case. Right. Exactly. So they're not all the same party. Yeah, that's true. But, well, so they're different parties. I don't know that there is any distinction between them for purposes of the case. I think they're close enough related and their interests are close enough aligned that they would be identical parties for race judicata purposes. And most importantly, they're both identified in the single document that controls the case, which is between AAI and its affiliates. So it's going to, for legal purposes, the only legal question in the case, there's no material distinction between those two parties. So the reasons that I don't think it matters is because, one, technically the same parties are before Judge Taylor on the same factual and legal question in both cases, so it's on all fours with every other prior case under the statute. But even if there were a distinction in the parties, the exact same legal issue was decided by the same judge. Does this plaintiff's conduct and does the agreement he signed prevent claims that he was promised something or induced to do something other than what was delivered to him? And the judge ruled on that precise issue. So at the moment he makes the substitution of judge motion, he has perfect clarity about how this judge is going to view the legal claims that he's advancing. And that fact is the common issue in all of the testing of waters cases in Bowman. Whatever the label is, courts consistently refuse to allow plaintiffs in that position with that knowledge about how the judge is going to rule on the precise issue before them to take a substitution because it's judge shopping. Let me ask you a hypothetical. Let's say that after that ruling, for whatever reason, World Bank wanted a change of judge. Would they be able to take a change? No, they wouldn't. And why not? Because they would know how the judge was going to rule on the issue in the case. But it's not against them. Well, I think it's the same facts. It's the same legal question. And it's going to bind them because their name is on that agreement. So if the ruling is going against us. It's because they're an affiliate. The line going directly to them as an affiliate is what you're drawing as a distinction in my hypothetical. Yes. They would be joined to that ruling by the language in the agreement and by the relationship with the defendant in that case. So if it had gone against them, if Judge Taylor had ruled against AAI in the 08 case and said, your waiver argument is nonsense and that's not what this contract means, and then I stand up for Royal Bank of Canada or Royal Bank of Scotland and say, you know, we'd like a substitution of judge now, I think they would cry foul and you would agree because I would be making that judgment with the exact clarity to know exactly what the judge was going to do. And that's judge shopping. I don't know exactly what judge shopping is, but both of these situations would be judge shopping. And that would be prohibited by the statute. Anything further, counsel? No. As to the remaining issues on the substance of the dismissal, we would rest on our briefs and direct you to the appellate ruling in the other case. And otherwise, we think the issues are fully brief. Thank you, Mr. Kmetz. Mr. Joyce, do you have some brief rebuttal? I do, Your Honor. Okay. Justice Hyman asked if I could give him a cite in the record to the stay, and I still can't, but I noticed in our opening brief, page 10, we cited to C-15 to 226, 29, 31 to 34, in support for the statement that Calabrosi agreed to stay in the prosecution of those claims while the parties have to negotiate a resolution for over two years. Those were the status orders they were reading. Okay. So there's no order. I think what you call a stay in your own mind was a continuance from time to time, per se. That could be correct, but let's assume it is correct. I don't know why it impacts on the issue in terms of a stay. Clearly, during that time period, there was no ruling on any substantial issue in the case. So whether it was stayed by agreement of the parties, agreed by a court order, in fact, nothing happened there because they're trying to settle. So the effect of it was a stay. It would be the same. Okay. And, Justice Hyman, it could be correct. I might have just been referred to it as a stay all these years, and maybe I can't find an order. But if I can, I will certainly get it to you promptly. There's a couple of things that I'd like to address from the argument of Mr. Chemnitz. So the first case, the case Calgosy v. UBS and ABN, was decided on a motion for summary judgment on June 18th. Plaintiff's proper filed a motion to reconsider, which wasn't ruled on until October or November of that year. After we considered to stay lifted because there was no settlement, we filed a motion to amend the complaint. We filed a motion for an SOJ, which we withdrew. Then on August 2nd, we filed a motion for leave to file a second amended complaint. On August 13th, we filed a motion. Is there any significance that we should take from the fact that the difference between the amended complaint and the second amended complaint is that AAI was removed, and that you withdrew your motion for substitution as long as AAI apparently was a party, and then when they were not a party, that's when you... Is there any significance to that? I don't think so. I mean, we promptly moved under the statute before there was any ruling, before there was a trial set. We complied with statutory requirements, and... It definitely shows you removed it until AAI was removed from the case. Isn't that indicative of the fact that you were just in the water? Well, we didn't think... No, I think... Here's how we looked at it. There was no viable claim against AAI. Therefore, there was no reason to keep it as a defendant. But you did file an amended complaint with their name on it and the claims after the ruling. So, we did. Lawyers sometimes do dumb things. Then we filed our second amended complaint and we removed them. And the court ruled on Vietnamese leave to file that complaint the same time he denied the motion substitution of judge. So, if RBS gets by the substitution of judge issue and you look at and have to look at the motions to dismiss, one of the things you have to conclude is how did Judge Taylor determine on the record before him that the scope of the nonreliance clause in an employment contract at the Futures Commission Merchant was meant by the parties to bind RBS? There's no record anywhere that says that. No testimony that says that. So, it was an improper conclusion, something the jury should have decided. Well, their argument is that it's an affiliate. It is, but it's an affiliate and that would be a relevant argument if the affiliate had an employment contract. So, if we were arguing we had an employment contract with RBS, then the employment contract with... It was an oral appointment. It was an oral contract. Not an employment. But it was an oral contract. An oral contract to refer trades, not an employment contract. So, their argument about the affiliate has some traction if we were arguing that Calabrese had an employee claim against RBS. So, he didn't. The distinction you're making is between a contract with regard to the commissions or whatever as opposed to an employment. Well, the employment contract was clearly an employment contract. He was an employee. He had other functions. He was a supervisor. He ran the desk. You know, with respect to his oral contract with RBS, the deal was simply, if you refer business that the FCM can't do and doesn't want to do to me, I'll share profits. Okay. So, it's also interesting. I think Mr. Cummings misspoke. RBS is not identified in the employment contract. It's an affiliate maybe, but it's not identified by name. And in the litigation that Judge Taylor ruled on in June of 2013, he did not rule that there was not a promise by Murphy on behalf of the bank that if Calabrese sent business, he'd share in profits. He never ruled on that. The ruling that came down before in the employment case was regardless of any oral agreements you have as an employee, if they're not in the employment contract, the number of lines closed says forget about it. Okay. So, he wasn't saying these contracts, these discussions weren't had. And that's a very important distinction in terms of what he would rule on in the RBS case. So, we didn't learn anything about that he might rule there because it was clear to us there was no issue of the number of lines closed relating to the contract with RBS. Unless you have other questions. Any questions? Thank you, Your Honor. Okay. Thank you, Mr. Joyce. I want to compliment the attorneys on their arguments and on their briefs. This matter is going to be taken under advisement. And this court now stands in recess.